IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br>**SANDRA MARIA DE FATIMA SEDA BARLETTA**<br>Debtor(s) | CASE NO. **19-02177** (MCF)<br>CHAPTER 13 |

Objection to Confirmation of
Chapter 13 Plan dated January 8, 2021

TO THE HONORABLE COURT:

Come now Banco Popular de PR – Special Loans "hereinafter (Banco Popular)" through its undersigned attorney and respectfully states and prays:

INTRODUCTION

1. Debtor filed for relief under the Bankruptcy Code on April 22, 2019.

2. Banco Popular – Special Loans filed a claim in the amount of $101,196.20, which is due in its entirety, guaranteed with a commercial property located at Ocean Park, Tapia Street, Lot 8, San Juan, PR. [*See*, Claims Register, Proof of Claim No. 2]

3. Debtor's plan proposes the following treatment for Banco Popular's secured claim:

    "Creditors having security interest over real property located at Calle Tapia #8, Ocean Park, San Juan, PR 00911… will be paid directly by Debtor upon closing of sale of the property… Sale of property to be made on or before the 28th month from the filing of the petition for relief. Funds from the sale of the property which are meant for payment of Banco Popular de PR's secured interest are to be deposited with the Bankruptcy Court and subject to final adjudication and/or adjustment of the claim by State Court proceedings under KCD2011-0625(905)" [*See*, Plan dated January 8, 2021, Dkt. 68, Part 8, paragraph 8.3]

4. Banco Popular objects to the confirmation of the Chapter 13 Plan since Debtor must provide evidence of the efforts to sell the property and explain the need for a 28-month period to do so. Also, payment of Popular's secured claim must be made upon sale, together with accrued post-petition interests and any reasonable fees, costs, or charges provided for under the agreement

or State statute under which such claim arose, without the need for the consignment of funds, and Debtor has eliminated from the plan the default remedy if the property is not sold within the proposed time.

## APPLICABLE LAW

5. Debtor carries the initial burden of showing that the plan is feasible. Before confirmation, the bankruptcy court should be satisfied that the debtor has the present as well as the future financial capacity to comply with the terms of the plan. Kristan v. Nesbit (In re Nesbit), 2008 Bankr. LEXIS 3957 (B.A.P. 1st Cir. June 17, 2008)

6. Section 1325 of the Bankruptcy Code states in its pertinent part as follows:

> (a) Except as provided in subsection (b), the court shall confirm a plan if –
>
> (6) the debtor will be able to make all payments under the plan and to comply with the plan – 11 U.S.C. § 1325(a)(6)

7. In In re Erickson, 176 B.R. 753 (Bankr E.D. Pa 1995) the Court discussed, at length, the issue of sale plans in Chapter 13 cases, placing particular emphasis to the court's conclusions in the case of In re Newton, 161 B.R. 207, 216-218 (Bankr. D. Minn. 1993). In this case the Court concluded the following:

> For the proposed cured-by-sale to pass muster, the debtor must make certain objective commitments in the plan, and meet any objection to confirmation by shouldering the burden of production of evidence at a hearing. **The plan should specify the terms under which the debtor proposes to market the property, including the listing agreement. It also should incorporate a default remedy to relieve the affected mortgagee(s) from the automatic stay, if the sale does not close by the end of the proposed cure period, If an affected mortgagee objects to confirmation, the debtor must produce evidence as to past marketing efforts, the state of the market for the subject asset, current sale prospects, the existence and maintenance of any "equity cushion" in the property, and all other circumstances that bear on whether the creditor will see its way our of the case financially whole. If the debtor cannot produce anything more than remote speculation as to the terms or date of a sale, if market conditions are eroding the value of the collateral; if the debtor's efforts at a sale are not directed or energetic enough; or if any other factors demonstrate that the creditor will not receive the value of its secured rights within a circumscribed, specified, and "reasonable" cure period, the court cannot confirm the**

**plan.** (Our emphasis) E.g. In re Gavia, 24 B.R. at 574; In re Seem, 92 B.R. 134, 135-136 (Bankr. E.D. Pa. 1988); In re Houge, 78 B.R. at 872-873; In re Vieland, 41 B.R. 1324, 140-41 (Bankr. N.D. Ohio 1984); In re Tucker 34 B.R. 257, 262-63 (Bankr. W.D. Okla. 1983)

8. In this case, to comply with the feasibility requirement of section 1325 (a)(6), Debtor must also demonstrate a sufficient likelihood of success in the action against Banco Popular.

9. A plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely. *See*, In Re Am. Capital Equip., 688 F. 3d 145 (3d Cir. 2012)

10. In addition, to be confirmed, the plan must distribute property in the amount of the allowed secured claim[1] and if the property which secures the claim has equity, then the creditor shall be allowed interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose[2].

## DISCUSSION

11. Debtor's plan is mostly funded by the sale of her property located in Ocean Park.

12. The Bankruptcy Estate employed relator Pedro Betancourt since June 19, 2019 [Dkt. 16] in order to sell the realty.

13. At the present time the property has not been sold and Debtor requests a period of 28th months to sell. [*See*, Plan, Dkt. 69, p. 11]

14. As a professional the realtor should be able to inform the Court about the value of similar properties selling around the area, the estimated exposure time to sell the property if the buyer and seller are motivated and may draw some light about market conditions.

15. Creditors have not been informed on the terms under which the property is being marketed (price), of past marketing efforts, the favorable or unfavorable market conditions of the property

---

[1] *See*, 11 U.S.C. § 1325(a)(5)(B)(ii)
[2] 11 U.S.C. § 506(b)

in the area, and how this affects the sale prospects.

16. Without any of this information the court cannot determine if the feasibility requirement is being met and creditors do not know if their secured rights are being protected.

17. Specifically, in regards to the treatment of Banco Popular's secured claim No. 2, the plan provides that "funds from the sale of the property which are meant for payment of Banco Popular de PR's secured interest are to be deposited with the Bankruptcy Court and subject to final adjudication and/or adjustment of the claim by State Court proceedings under KCD2011-0625(905)". [*See*, Plan dated September 25, 2020, Dkt. 52, Part 8, paragraph 8.3]

18. The State Court case is a money collection and foreclosure proceeding brought by Banco Popular against Debtor for failure to make payments under the loan agreement.

19. Foreclosure has been effectively stayed by the filing of the bankruptcy petition and by Debtor questioning the authenticity of the signatures on the documents that support the existence of the loan and the secured nature of Banco Popular's claim.

20. Debtor's position is or was that the litigation outcome would potentially affect Banco Popular's right to payment.

21. It is Banco Popular's contention that Debtor was not able to establish that the signatures in the loan documents were not authentic.

22. In support of this contention, the appearing creditor attaches an email by its legal representation in the State Court Case informing about recent developments in the case. [Exhibit 1 – CASE STATUS REPORT]

23. This ultimately means that Banco Popular has a secured right to payment and that payment must be made immediately upon sale of the asset.

24. Lastly, in the case that Debtor establishes equity in property, Banco Popular has a right to

receive payment of post-petition interests on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose, and Debtor has to provide for a default remedy, such as relief from stay, if the property is not sold by the proposed time.

**WHEREFORE**, BPPR respectfully objects to the confirmation of debtor's chapter 13 plan dated January 8, 2021.

**I CERTIFY:** That *the preceding document has been electronically filed with the Clerk of the Court, using the CM/ECF System. Notice has been sent electronically to debtor's counsel,* **NOEMI LANDRAU RIVERA** nlandrau@landraulaw.com; **ALEJANDRO OLIVERAS RIVERA** enogueras@ch13sju.com; UST, ustpregion21.hr.ecf@usdoj.gov; and to all CM/ECF registered users.

In San Juan, Puerto Rico, this 24th day of February 2021.

**Banco Popular PR-Special Loans**
PO Box 362708
San Juan, P. R. 00936-2708
Tel. 787-764-3983
Fax 787-281-4140

/s/EDUARDO M. VERAY LOPEZ, ESQ.
USDC-PR 224407
eduardo.veray@popular.com

**Marichal, Hernández, Santiago & Juarbe, LLC**
ATTORNEYS AT LAW

Triple S Plaza
1510 FD Roosevelt
9th Floor, Suite 902
Guaynabo, Puerto Rico 00968

Post Office Box 190095
San Juan, Puerto Rico 00919-0095

Telephone: (787) 753-1565 / 758-8029
Fax: (787) 763-1704
Email: mh@mhlex.com

Writer's Extension: 2027
Writer's Direct E-Mail: kmurati@mhlex.com

**VIA EMAIL:**
javier.cosme@popular.com

September 29, 2020

Mr. Javier A. Cosme Rivera
Commercial Relationship Officer
Special Loans Division/Bankruptcy Section

**RE:  BPPR vs. Sandra María Fátima Seda Barletta,**
**Civil No. KCD2011-1625(905)**
**N/E: 4.427**
**CASE STATUS REPORT**

In the above-mentioned case, the Bankruptcy Court issued an Order, in which it modified the automatic the stay in order to authorize the First Instance Court of Puerto Rico (FIC) to evaluate Defendant's questioning regarding the authenticity of Ms. Rafaela Caban's ("Ms. Cabán") signature on the Promissory Note at issue. As a result, the FIC scheduled an evidentiary hearing, which was later cancelled due to the fact that we proved to the Court that defendant had no evidence to support her allegations regarding the authenticity of Cabán's signature, and therefore, in order to be able to support such allegations, she would have to retain the services of an expert in calligraphy.

On December of 2019, the FIC issued a new Order in which it granted defendant time to retain the services of an expert in calligraphy and schedule a meeting with BPPR in order to examine all the documents regarding the aforementioned promissory note. In said Order, the FIC also granted BPPR time to announce its expert, which was to begin after defendant's expert witness notified his expert report. On February 18, 2020, the parties scheduled an inspection for March 10th, 2020 in BPPR's premises in Altamira in order to review the promissory notes, as well as other banking documents, which were stamped with two different signatures: "Rafaela Cabán Rosa" and "Ketty Cabán". On said inspection, defendant's expert Mr. Evaristo Álvarez, defendant and defendant's counsel inspected the aforementioned documents. BPPR's expert, Mr. Rafael Viñas, also attended said inspection.

After the inspection on March 10, 2020 we met with Mr. Rafael Viñas in which he anticipated the results of his examination of the signatures in the promissory note and other banking documents. His preliminary report was that, in order to determine that the person that signed the evaluated documents as "Ketty Caban" and "Rafaela Cabán" were the same person, he would need Ms.

00056431/

Case Status Report
September 29, 2020
Page 2

Cabán to execute both signatures, which is impossible, do to her death. However, Mr. Viñas found that the initials in all documents were executed by the same person, which confirms that all signatures were executed by Ms. Cabán. After defendant notified her expert's report in June, we forwarded it to our expert in order for him to evaluate it. In July, Mr. Viñas submitted his report. We then proceeded to notify our expert's report to defendant's legal representative.

After notifying our experts report to defendant's counsel, we proceeded to file a Motion for Order in which we requested the Court to evaluate the reports and, consequently, determine that the questioned signature was in fact executed by Ms. Cabán Rosa, as per concluded by both experts. We also requested an order to remand the case to the Bankruptcy Court. After the filing of said Motion, defendant proceeded to file two motions that did not pertain to the controversy regarding the authenticity of Ms. Cabán's signature on the Promissory Note.

On September 18, 2020, the Court scheduled a Hearing in order to discuss the status of the case and the motions filed. During said hearing, defendant's counsel, proceeded to discuss issues not pertaining the questioning of Ms. Cabán's signature in Promissory Note in violation of the modification of the Automatic Stay issued by the Bankruptcy Court. This was objected by us and sustained by the Court. In said Status Hearing, the Court ruled that the only jurisdiction it had at this time was regarding to the discussion regarding the authenticity of Ms. Cabán's signature on the Promissory Note, as well as the evaluation of the expert witness reports, regarding this issue. Subsequently, we informed the Court that we had submitted all the documentation regarding the evaluation of the signature. It was stipulated by both parties that, after the submission of the corresponding reply and opposition to the pending motions, the Court would issue the corresponding judgment regarding the authenticity of Ms. Rafaela Caban's signature.

On September 28, 2020, we proceeded to file our Reply to the Answer to Motion for Order of August 5, 2020, in which we requested the Court to issue an Judgment indicating that there is no question that the signature in the Promissory Note at issue is, in fact, Rosa Caban's signature as per the conclusions emitted by both experts, and to remand the case to the Bankruptcy Court in order to continue its proceedings. Defendant now has until October 9th, 2020, to file her Surreply Motion.

In conclusion, we believe that this case should be remanded to the Bankruptcy Court in order to continue the corresponding procedures.

00056431/     Marichal, Hernández, Santiago & Juarbe, LLC